UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Barry Ishmael McReynolds | Civil File No. 22-cv-03219 (ECT/JFD) |
| Plaintiff, | |
| vs. | **ANSWER OF DEFENDANT ZACHARY HANSEN** |
| State of Minnesota, et al, | |
| Defendants. | |

Defendant Mr. Zachary Hansen in his individual capacity, and for his Answer to Plaintiff's Complaint, admits, denies, and alleges as follows:

**ANSWER**

Except as hereinafter expressly admitted, qualified, denied, or otherwise answered, Defendant in his individual capacity denies each and every allegation in the Complaint.

**INTRODUCTION**

1.      This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the common law of the State of Minnesota, against the State of Minnesota, Zachary Hansen, Trooper with the Minnesota State Patrol, and Troopers Doe 1-6, in their individual and official capacities.

**ANSWER:**   This is a description of the claims, to which no response is required. To the extent a response is required, denies.

2.      It is alleged that Defendant Troopers made an unreasonable seizure of Plaintiff's person in violation of his rights under the Fourth and/or Fourteenth Amendment to the United States Constitution. It is also alleged that Defendant Troopers engaged in retaliation for Plaintiff's assertion of his First and Fifth Amendment rights and that these

violations were committed as a result of policies and customs of the State of Minnesota. It is further alleged that Defendants sexually assaulted Plaintiff and engaged in racial discrimination against Plaintiff in violation of Minnesota state law.

**ANSWER:**   This is a description of the claims, to which no response is required. To the extent a response is required, denies.

## JURISDICTION

3.     Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

**ANSWER:**   Paragraph 3 contains legal conclusions to which no response is required. To the extent a response is required, denies.

## VENUE

4.     This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

**ANSWER:**   Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, denies.

## PARTIES

5.     Plaintiff Barry Ishmael McReynolds ("Mr. McReynolds") was at all material times a resident of Richfield, Minnesota, and of full age.

**ANSWER:**   Mr. Hansen lacks knowledge or information sufficient to form a belief as to the truth as to where Plaintiff lives, and therefore denies. Denies any remaining allegations in paragraph 5.

6.     Defendant Minnesota State Trooper Zachary Hansen ("Trooper Hansen" or "Defendant Hansen") was at all times relevant to this complaint a duly appointed and acting

Trooper of the Minnesota State Patrol, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota.

**ANSWER:**   Mr. Hansen admits that he was a State Trooper on December 12, 2019.

Plaintiff's assertion that Mr. Hansen was acting under the color of law or under the color

of statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota

is a conclusion of law to which a response is not required. To the extent a response is

required to Plaintiff's assertion, denies.

7.       Defendants Minnesota State Troopers John and Jane Does 1-6 ("Troopers Doe 1-6" or "Defendants Doe 1-6"), whose names are not presently known, were at all times relevant to this complaint duly appointed and acting Troopers of the Minnesota State Patrol, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota.

**ANSWER:**   On May 15, 2023, the claims against Troopers 1-6 were dismissed, and no

response to allegations relating to those claims is required. To the extent a response is

required, denies. Denies the remaining allegations in Paragraph 7.

8.       The State of Minnesota, is a municipal corporation and the public employer of the Defendant State Trooper. Defendant State of Minnesota is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials, including Trooper Hansen.

**ANSWER:**   Mr. Hansen answers that the Minnesota State Patrol, an Agency of the

Minnesota Department of Public Safety, was his public employer. The second sentence of

paragraph 8 is a legal statement, for which a response is not required. To the extent a

response is required, denies. On May 15, 2023, the claims against Troopers 1-6 were

dismissed, and no response to allegations relating to those claims is required. To the extent

a response is required, denies. Denies the remaining allegations in Paragraph 8.

## FACTS

9.     On 12/12/2019 about 8:00 pm, Mr. McReynolds, a Black man, was driving Eastbound on Interstate 94 through Saint Paul.

**ANSWER:**  Mr. Hansen lacks knowledge or information sufficient to form a belief as to the truth of where Plaintiff was driving at "about 8:00 pm" on December 12, 2019, and therefore denies.

10.     On that night, it was snowing.

**ANSWER:**  Mr. Hansen admits it snowed on the night of December 12, 2019.

11.     Mr. McReynolds observed that other cars on that stretch of highway had varying amounts of snow buildup on their back bumpers and license plates.

**ANSWER:**  Mr. Hansen lacks knowledge or information sufficient to form a belief as to the truth of what Plaintiff observed about other cars while he was driving, and therefore denies.

12.     Mr. McReynolds was driving his 2002 GMC Yukon.

**ANSWER:**  Mr. Hansen lacks knowledge or information sufficient to form a belief as to the truth of what vehicle Plaintiff was driving, and therefore denies.

**13**.     Mr. McReynolds had a passenger in his vehicle.

**ANSWER:**  Mr. Hansen admits that there was another individual in the passenger seat of the vehicle Plaintiff was driving.

14.     Mr. McReynolds was acting as a good Samaritan in giving his passenger a ride home.

4

**ANSWER:**   Mr. Hansen lacks knowledge or information sufficient to form a belief as to the how Plaintiff was acting and therefore denies.

15.    Trooper Hansen entered Interstate 94 in the vicinity of Highway 280.

**ANSWER:**   Mr. Hansen admits that at some point on the night of December 19, 2019, he drove on Interstate 94. Denies the remaining allegations in paragraph 15.

16.    Trooper Hansen moved alongside Mr. McReynolds.

**ANSWER:**   Mr. Hansen admits that at some point on the night of December 19, 2019, he moved alongside Plaintiff on Interstate 94. Denies the remaining allegations in paragraph.

17.    Trooper Hansen made eye contact with Mr. McReynolds.

**ANSWER:**   Denies.

18.    Trooper Hansen then slowed and shifted lanes to follow Mr. McReynolds.

**ANSWER:**   Admit.

19.    On information and belief, Trooper Hansen saw that Mr. McReynolds was Black.

**ANSWER:**   Denies.

20.    Trooper Hansen activated his emergency lights.

**ANSWER:**   Mr. Hansen admits he initiated a traffic stop for Plaintiff and activated his lights as a part of that traffic stop.

21.    Mr. McReynolds pulled over to the margin of the highway near Snelling Avenue.

**ANSWER:**   Mr. Hansen admits that Plaintiff pulled over to the margin of the highway.

22.   Trooper Hansen approached the driver's window of Mr. McReynolds vehicle.

**ANSWER:**   Mr. Hansen admits that Mr. Hansen approached the driver's window of Plaintiff's vehicle.

23.   Mr. McReynolds rolled down his window to speak with Trooper Hansen.

**ANSWER:**   Mr. Hansen admits that Plaintiff lowered his window when he appeared at his window.

24.   Trooper Hansen stated that he stopped Mr. McReynolds because snow made his license plate unreadable license plate.

**ANSWER:**   Mr. Hansen admits that he informed Plaintiff he had stopped him because snow had obstructed his license plate. Denies any allegation that Plaintiff's constitutional rights were violated.

25.   Mr. McReynolds offered his license and insurance.

**ANSWER:**   Mr. Hansen admits that Plaintiff offered his license and insurance.

26.   Trooper Hansen asked Mr. McReynolds when was the last time he consumed alcohol.

**ANSWER:**   Mr. Hansen admits that he asked Plaintiff when the last time was that he consumed alcohol. Denies any allegation that Plaintiff's constitutional rights were violated.

27.   Mr. McReynolds stated that he did not drink.

**ANSWER:**   Mr. Hansen admits that Plaintiff stated he did not drink.

28.   Trooper Hansen repeated the question

**ANSWER:**   Mr. Hansen admits that he repeated the question. Defendant denies any allegation of violating Plaintiff's constitutional rights.

29.    Mr. McReynolds repeated his answer.

**ANSWER:**   Mr. Hansen admits that Plaintiff repeated his answer. Denies any allegation that Plaintiff's constitutional rights were violated.

30.    Trooper Hansen asked if Mr. McReynolds had ever consumed alcohol in his lifetime.

**ANSWER:**   Mr. Hansen admits that he asked if Plaintiff ever consumed alcohol in his lifetime. Denies any allegation that Plaintiff's constitutional rights were violated.

31.    Mr. McReynolds repeated that he did not drink.

**ANSWER:**   Mr. Hansen admits that Plaintiff repeated he did not drink. Denies any allegation that Plaintiff's constitutional rights were violated.

32.    Trooper Hansen said, "You're not going to answer the question, huh?"

**ANSWER:**   Defendant admits that he asked if Plaintiff was going to answer the question. Denies any allegation that Plaintiff's constitutional rights were violated.

33.    Mr. McReynolds said that he just didn't drink.

**ANSWER:**   Defendants admit that Plaintiff stated that he just didn't drink. Denies any allegation that Plaintiff's constitutional rights were violated.

34.    Trooper Hansen opened the door of the car.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

35.    Trooper Hansen asked McReynolds to step out of the car

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

36.    Mr. McReynolds asked the reason why he was stepping out of the car.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

37.    Trooper Hansen stated that he smelled alcohol.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

38.    Mr. McReynolds said that this was not him.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

39.    Trooper Hansen asked if Mr. McReynolds was going to "hop out" or not.

**ANSWER:** The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

40. Mr. McReynolds asked if he had to hop out.

**ANSWER:** The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

41. Trooper Hansen told Mr. McReynolds that if he did not get out of the car, Trooper Hansen would remove him from the vehicle.

**ANSWER:** The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

42. Trooper Hansen asked if Mr. McReynolds if Mr. McReynolds [*sic*] had any weapons on him.

**ANSWER:** The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

43. Mr. McReynolds said that he did not answer questions, and that he didn't drink.

**ANSWER:** The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

44.    Trooper Hansen said, "You don't answer questions?"

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

45.    Mr. McReynolds said that he does not answer questions but he did not carry weapons.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

46.    Trooper Hansen asked if Mr. McReynolds was going to give him any problems.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

47.    Mr. McReynolds said that he did not want any problems either, and that he was just trying to drive a friend home.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

48.    Trooper Hansen asked, as an officer of the law, was Mr. McReynolds going to give him problems.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

49.    Mr. McReynolds said that he did not believe so, and that he was not a criminal.

**ANSWER:**    The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

50.    Trooper Hansen asked if Mr. McReynolds had warrants.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

51.    Mr. McReynolds said no.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

52.    Trooper Hansen asked if Mr. McReynolds had drugs in the car.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

53.    Mr. McReynolds repeated that he does not answer those questions.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

54.   Mr. McReynolds asked if Trooper Hansen still wanted him to get out.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

55.   Trooper Hansen gave Mr. McReynolds instructions to step out for a search for weapons.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

56.   Trooper Hansen had seen no indication that Mr. McReynolds was armed.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

57.   Mr. McReynolds cooperated with Trooper Hansen's search.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

58.   Mr. McReynolds asked why he was being searched.

**ANSWER:**  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

59.    Trooper Hansen stated that McReynolds had given him suspicion that he might be carrying a weapon.

**ANSWER:**  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

60.    Trooper Hansen asked what an object in McReynolds pants pocket was.

**ANSWER:**  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

61.    Mr. McReynolds repeated that he does not answer questions.

**ANSWER:**  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

62.    Trooper Hansen said he was investigating McReynolds for DWI.

**ANSWER:**  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

63.    Mr. McReynolds stated that he had done nothing wrong and did not drink.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations

64.     Trooper Hansen repeatedly squeezed Mr. McReynolds groin.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

65.     Mr. McReynolds was wearing ordinary jeans.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

66.     Mr. McReynolds said that Trooper Hansen did not need to keep squeezing his groin.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

67.     Trooper Hansen asked "What is that?" He was referring to Mr. McReynolds' genitalia.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

68.     Mr. McReynolds stated that was what he was born with. Mr. McReynolds was referring to his genitalia.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

69.     Trooper Hansen said he did not know what that was.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

70.     Mr. McReynolds clarified that Trooper Hansen did not know what he meant by what he was born with.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

71.     Trooper Hansen said he did not know what McReynolds was born with.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

72.     Trooper Hansen stated that he was not God.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

73.   Trooper Hansen moved Mr. McReynolds to a position between the cars.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

74.   Mr. McReynolds observed that his license plate was not obstructed by snow.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

75.   Trooper Hansen told Mr. McReynolds that he was going to administer a field sobriety test, and that if he did not participate that he would be taken to jail for DWI.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

76.   Mr. McReynolds participated in the field sobriety test.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

77.   Trooper Hansen conducted a horizontal nystagmus test for over two minutes, pausing to warm his hands.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

78.     Trooper Hansen conducted a single-leg balance test.

ANSWER:  The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith.  Denies the remaining allegations.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

79.     Trooper Hansen conducted a countdown test.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

80.     Trooper Hansen conducted an estimated time test.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

81.     Mr. McReynolds insisted that he did not answer questions.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

82.     Trooper Hansen conducted another horizontal nystagmus test.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

83.    At no time did Mr. McReynolds show any signs of intoxication.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

84.    By that time, six other Troopers had arrived on the scene.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

85.    Mr. McReynolds asked why such a large number of police officers were present.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

86.    Trooper Hansen said, "It's because of how you are acting. So now you know, next time you get pulled over that's not how you act."

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations. Denies Mr. Hansen violated Mr. McReynolds' constitutional rights.

87.     Mr. McReynolds said, "How was I acting?"

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

88.     Trooper Hansen said, purportedly quoting McReynolds, "I don't know if I had weapons. I don't know if I had drugs."

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

89.     Mr. McReynolds never said what Trooper Hansen said he had.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

90.     Mr. McReynolds answered, "I said I don't answer questions."

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

91.     Trooper Hansen said, "Exactly."

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

92.     Another trooper agreed.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

93.     Trooper Hansen conducted a preliminary alcohol screening test using a hand-held breath machine.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

94.     Mr. McReynolds did not test as intoxicated.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

95.     Trooper Hansen sent Mr. McReynolds back to his vehicle.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

96.     Trooper Hansen said that McReynolds had a suspended license and would not be allowed to drive home.

**ANSWER:**   The relevant encounter between Plaintiff and Mr. Hansen was captured on video. The video speaks for itself, and Mr. Hansen denies any characterization or allegation inconsistent therewith. Denies the remaining allegations.

97.     Mr. McReynolds did not have a suspended license.

**ANSWER:**  Denies.

98.     Mr. McReynolds' license plate was not obstructed by snow as stated by Trooper Hansen.

**ANSWER:**  Denies paragraph 98.

99.     Despite this, Trooper Hansen issued a citation to Mr. McReynolds, charging him with Driving after Suspension, a violation of MN Stat. §171.24.1 and Plate Covered with Dirt/Snow/Etc., a violation of MN Stat. §169.79.7.

**ANSWER:**  Mr. Hansen admits that he issued a citation to Plaintiff for Driving after Suspension, a violation of Minnesota Statute §171.24.1 and Plate Covered with Dirt/Snow/Etc., a violation of Minnesota Statute §169.79.7. Denies any allegation they violated Plaintiff's constitutional rights.

100.    The charges for the citation issued by Trooper Hansen were later dropped.

**ANSWER:**  Mr. Hansen lacks knowledge and information as to the status of the citations issued against the Plaintiff, and therefore denies paragraph 100.

101.    As a result of Trooper Hansen's actions, Mr. McReynolds suffered shame, humiliation, and embarrassment.

**ANSWER:**  Mr. Hansen states that he lacks sufficient knowledge or information to admit or deny paragraph 101, and therefore denies.

102.    As a result of Trooper Hansen's actions, Mr. McReynolds was forced to attend court appearances and defend himself against the false criminal charges fabricated by Trooper Hansen, which were later dismissed.

**ANSWER:**   Mr. Hansen states that he lacks sufficient knowledge or information to admit or deny Plaintiff attended court, and therefore denies. If Plaintiff did attend court, Mr. Hansen denies it was because of fabricated charges.

103.    As a result of Trooper Hansen's actions, Mr. McReynolds suffered severe emotional/psychological trauma, anguish, and distress, including depressed mood, anxiety, fear, insecurity, difficulty sleeping, and diminished quality and enjoyment of life. Mr. McReynolds is receiving mental health therapy as a result of Trooper Hansen's actions.

**ANSWER:**   Mr. Hansen states that he lacks sufficient knowledge or information to admit or deny paragraph 103, and therefore denies. Denies any allegation that Plaintiff's constitutional rights were violated.

104.    Mr. McReynolds has medical expenses as a result of Trooper Hansen's actions.

**ANSWER:**   Mr. Hansen states that he lacks sufficient knowledge or information to admit or deny whether Plaintiff has medical expenses, and therefore denies. To the extent Plaintiff has medical expenses, Mr. Hansen denies that were caused by his actions. Denies the remaining allegations, and denies any allegation that Plaintiff's constitutional rights were violated

## CLAIMS FOR RELIEF

## COUNT 1: 42 U.S.C. § 1983 – FOURTH AND/OR FOURTEENTH AMENDMENT UNREASONABLE SEARCH AND SEIZURE, AND FAILURE TO PROTECT AGAINST ALL DEFENDANTS

105.    Paragraphs 1 through 104 are incorporated herein by reference as though fully set forth.

**ANSWER:**   Mr. Hansen repeats and incorporates by reference all responses to the allegations in each Paragraph of the Complaint.

106.   Defendant Hansen lacked reasonable suspicion to stop Plaintiff under Terry v. Ohio.

**ANSWER:**   Denies.

107.   Defendant Hansen violated Plaintiff's Fourth and/or Fourteenth Amendment rights when he stopped Plaintiff without reasonable suspicion.

**ANSWER:**   Denies.

108.   On information and belief, Defendant Hansen stopped Plaintiff based upon his race.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

109.   Biased law enforcement based on race violates the Fourteenth Amendment to the U.S. Constitution.

**ANSWER:** Paragraph 109 articulates an opinion and legal conclusion, to which a response is not required. To the extent a response is required, denies. Denies any allegation that they violated Plaintiff's constitutional rights.

110.   Defendant Hansen violated Plaintiff's Fourth and/or Fourteenth Amendment rights when he stopped him based upon his race.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

111.    On information and belief, the Minnesota State Patrol stops, searches and arrests Black men at a higher rate than white men.[1]

**ANSWER:**   Denies and denies any allegation that Plaintiff's constitutional rights were violated.   Regarding the allegations in footnote 1, Mr. Hansen answers that the cited document speaks for itself and denies all allegations to the extent inconsistent therewith.

112.    On information and belief, the biased stops, searches and arrests are based upon accepted practices within the Minnesota State Patrol.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

113.    These accepted practices establish a pattern or practice of behavior under Monell v. Dept. of Social Services depriving Black men of their Fourth and/or Fourteenth Amendment Rights.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

114.    Plaintiff was deprived of his Fourth and/or Fourteenth Amendment rights by this pattern or practice of behavior by the Minnesota State Patrol.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

115.    Defendant Hansen conducted a search of Plaintiff for weapons without any indication that he might be armed.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

---

[1] Allegation:  Racial Profiling Studies in Law Enforcement: Issues and Methodologies. Information Brief. Minnesota House of Representatives Research Department. June 2000.

116.    Defendant Hansen's search of Plaintiff without an indication that he might be armed violated Plaintiff's Fourth and/or Fourteenth Amendment right to be secure in his person from unreasonable searches.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

117.    Defendant Hansen, despite no indication that Plaintiff was armed, conducted an extensive and repeated search of Plaintiff's groin area.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

118.    Defendant Hansen violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure when he conducted an extensive and repeated search of his groin area without cause.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

119.    Based on the above factual allegations, Defendants Doe 1-6, through their actions, acting under the color of state law, violated Plaintiff's Constitutional right to remain free from unreasonable searches and seizures under the Fourth and/or Fourteenth Amendment to the United States Constitution by failing to protect Plaintiff from Defendant Hansen's unreasonable search and seizure. Defendants Doe 1-6 observed Defendant Hansen's conduct toward Plaintiff and had the means and opportunity to prevent it, but nonetheless failed to protect Plaintiff from Defendant Hansen's actions.

**ANSWER:**   On May 15, 2023, the claims against Troopers 1-6 were dismissed, and no response to allegations relating to those claims is required. To the extent a response is required, denies. Denies the remaining allegations in Paragraph 119.

120.    As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were violated.

## COUNT 2: 42 U.S.C. § 1983 – FIRST AND FIFTH AMENDMENTRETALIATION AGAINST ALL DEFENDANTS

121.   Paragraphs 1 through 120 are incorporated herein by reference as though fully set forth.

**ANSWER:**   Defendants repeat and incorporate by reference all responses to the allegations in each Paragraph of the Complaint.

122.   Defendant Hansen told Plaintiff that his extensive investigation was a result of Plaintiff's refusal to answer his investigative questions.

**ANSWER:**   Denies.

123.   Plaintiff had a right to refuse to answer investigative questions under the Fifth Amendment to the U.S. Constitution.

**ANSWER:**   Paragraph 123 is a conclusion of law to which no response is required. To the extent a response is required, denies.

124.   Plaintiff had a right not to engage in compelled speech under the First Amendment to the U.S. Constitution.

**ANSWER:**   Paragraph 124 is a conclusion of law to which no response is required. To the extent a response is required, denies.

125.   Being subject to extensive investigation on the roadside during Minnesota winters has a predictable chilling effect on freedom of expression.

**ANSWER:**   Denies.

126.   Defendant Hansen violated Plaintiff's First Amendment Right to freedom of expression when he told him that his treatment was a result of his failure to answer his investigative questioning.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were

violated.

127.   A second trooper of the Minnesota State Patrol assented to Defendant Hansen's statement that his extensive investigation was a result of Plaintiff's assertion of his First and Fifth Amendment rights.

**ANSWER:**   Denies.

128.   On information and belief, extensive investigations of persons expressing their First and Fifth Amendment rights is an accepted practice within the Minnesota State Patrol.

**ANSWER:**   Denies.

129.   The Minnesota State Patrol violated Plaintiff's First Amendment rights by a pattern or practice of conducting extensive investigation of persons expressing their First Amendment rights to be free from compelled speech.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were

violated.

130.   As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

**ANSWER:**   Denies, and denies any allegation that Plaintiff's constitutional rights were

violated.

## COUNT 3: 42 U.S.C. § 1983 –FOURTH AND/OR FOURTEENTH AMENDMENT UNREASONABLE SEARCH AND SEIZURE (*MONELL* VIOLATION) AGAINST DEFENDANT STATE OF MINNESOTA

131.   Paragraphs 1 through 104 are incorporated herein by reference as though fully set forth.

**ANSWER:**   Count 3 was dismissed on May 15, 2023, and no response is required to

allegations relating to Count 3. To the extent a response is required, Defendants repeat and

incorporate by reference all responses to the allegations in each Paragraph of the Complaint.

132.   Defendant State of Minnesota equipped State Trooper vehicles with video camera and microphone recording technology prior to December 12, 2019.

**ANSWER:**   Count 3 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 3. To the extent a response is required, denies.

133.   Prior to December 12, 2019, Defendant State of Minnesota developed and maintained policies and/or customs exhibiting deliberate indifference towards the Constitutional rights of persons in the State of Minnesota or in the custody of the Minnesota State Patrol, which caused the violations of Plaintiff's constitutional rights.

**ANSWER:**   Count 3 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 3. To the extent a response is required, denies.

134.   It was the policy and/or custom of Defendant State of Minnesota to inadequately supervise and train its employees, including the Defendant Troopers, thereby failing to adequately prevent and discourage further Constitutional violations on the part of its employees.

**ANSWER:**   Count 3 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 3. To the extent a response is required, denies.

135.   As a result of these policies and/or customs and lack of training, employees of the Defendant State of Minnesota, including the Defendant Troopers, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

**ANSWER:**   Count 3 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 3. To the extent a response is required, denies.

136.   These policies and/or customs and lack of training were the cause of the violations of Plaintiff's constitutional rights alleged herein.

**ANSWER:** Count 3 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 3. To the extent a response is required, denies.

### COUNT 4: SEXUAL ASSAULT AGAINST DEFENDANT HANSEN UNDER MINNESOTA STATE LAW

137. Paragraphs 1 through 104 are incorporated herein by reference as though fully set forth.

**ANSWER:** Defendants repeat and incorporate by reference all responses to the allegations in each Paragraph of the Complaint.

138. Based on the above factual allegations, Defendant Hansen engaged in wrongful, sexual contact when he repeatedly squeezed Plaintiff's groin, without justification.

**ANSWER:** Denies.

139. Immediately prior to Defendant Hansen's nonconsensual sexual contact, Defendant Hansen told Plaintiff that if he did not exit the vehicle, Defendant Hansen would remove him from the vehicle.

**ANSWER:** Denies.

140. Defendant Hansen's threat constituted coercion to submit to the nonconsensual sexual contact.

**ANSWER:** Denies.

141. As a direct and proximate result of this assault, Plaintiff suffered damages as aforesaid.

**ANSWER:** Denies.

### COUNT 5: SEXUAL ASSAULT AGAINST DEFENDANT STATE OF MINNESOTA UNDER MINNESOTA STATE LAW

142. Paragraphs 1 through 104 are incorporated herein by reference as though fully set forth.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, Defendants repeat and incorporate by reference all responses to the allegations in each Paragraph of the Complaint.

143.   Based on the above factual allegations, Defendant State of Minnesota controlled the interactions between Defendant State Troopers and Plaintiff through its hiring, training, monitoring and supervision of its employees.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, denies.

144.   On information and belief, Defendant State of Minnesota trained its Defendant Troopers conducting intimate searches for weapons without adequate suspicion under the constitution.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, denies.

145.   On information and belief, Troopers of the State of Minnesota had reason to believe that intimate searches without adequate suspicion would be tolerated.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, denies.

146.   As a result of the State of Minnesota's custom allowing Troopers to conduct intimate searches for weapons without cause, Plaintiff was subjected to coerced sexual contact by Trooper Hansen.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, denies.

147.   As a direct and proximate result of this sexual assault, Plaintiff suffered damages as aforesaid.

**ANSWER:**   Count 5 was dismissed on May 15, 2023, and no response is required to allegations relating to Count 5. To the extent a response is required, denies.

## AFFIRMATIVE AND OTHER DEFENSES

1.   Defendants' conduct, as alleged in the Complaint, did not violate Plaintiff's constitutional rights and was not otherwise unlawful.

2.   Mr. Hansen had sufficient reasonable suspicion to pull over Plaintiff's vehicle.

3.   Mr. Hansen had sufficient reasonable suspicion to conduct a pat-down search of Plaintiff's person.

4.   Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

5.   Plaintiff's claims are barred by the provisions, limitations, and exclusions of the Minnesota Tort Claims Act, including, but not limited to, Minn. Stat. § 3.736, subds. 3(b).

6.   Plaintiff's claims are subject to the monetary limits in Minn. Stat. § 3.736, subd. 4 and the notice requirements of Minn. Stat. § 3.736, subd. 5.

7.   Plaintiff's claims are barred by the common law doctrine of official immunity and vicarious official immunity.

8.   Plaintiff's claims are barred by the public duty doctrine.

9.   Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

10.     To the extent Plaintiff has filed to mitigate damages, such damages are unavailable.

11.     Mr. Hansen does not have sufficient information and/or knowledge to form a belief as to the character or extent of any alleged injuries or damages sustained by Plaintiff and demands strict proof thereof.

12.     Plaintiff's claims may be barred, in whole or in part, by the doctrines of laches, consent, unclean hands, waiver and/or estoppel.

13.     Defendant reserves any other available affirmative defenses.

14.     Defendant reserves the right to supplement or amend its defenses as the case progresses.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court: (1) dismiss Plaintiff's Complaint with prejudice and on the merits; (2) enter judgment in Defendant's favor with respect to all of the claims and causes of action set forth in the Complaint; (3) award Defendant's costs, reasonable attorney fees and disbursements; and (4) any other relief that the Court deems just and proper under these circumstances.

***SIGNATURE ON FOLLOWING PAGE***

Dated: May 30, 2023

KEITH ELLISON
Attorney General
State of Minnesota


s/ Ian Taylor, Jr.
JENNIFER OLSON (0391356)
IAN TAYLOR, JR. (0401548)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1348 (Voice)
(651) 282-5832 (Fax)
Jennifer.Olson@ag.state.mn.us
Ian.Taylor@ag.state.mn.us

ATTORNEYS FOR DEFENDANT

|#5433548-v1